STATE ex rel. VIDAL, Prosecuting Attorney, v. LAMOUREUX et al.

(June 20, 1892.)

TOWNS—INCORPORATION — REPEAL OF STATUTE BY CONSTITUTION.

Const. art. 13, § 1, provides that the legislature shall provide by general laws for the organization and classification of municipal corporations, and that the powers of each class shall be defined by general laws. Section 2 declares that "no municipal corporation shall be organized without the consent of the majority of the electors residing within the district proposed to be so incorporated, such consent to be ascertained in the manner and under such regulations as may be prescribed by law." Held, that section 2 was not self-executing, and did not, without legislation to carry it into effect, by implication repeal the then existing law authorizing the incorporation of towns on the application of 30 electors.

Error to district court, Fremont county; JESSE KNIGHT, Judge.

Action in the nature of quo warranto, on the relation of James S. Vidal, prosecuting attorney of Fremont county, to determine the right of Jules Lamoureux and others to exercise the office and franchise of being the mayor and councilmen of the pretended town of Lander, and of being a body corporate. A demurrer to defendants' answer was overruled, and judgment rendered in their favor. Plaintiff brings error. Affirmed.

D. A. Preston and S. T. Corn, for plaintiff in error. C. N. Potter and J. T. Norton, for defendants in error.

CONAWAY, J. This is an action in the nature of quo warranto. The petition charges that defendants use, without authority of law, the liberties, privileges, offices, and franchises of being the mayor and councilmen of the pretended town of Lander, and of being a body corporate and politic in law, fact, and name, by the name of the "Town Council of the Town of Lander." The answer admits the use by defendants of these franchises and offices, but denies that such use is without authority of law. The answer is in the nature of a plea in confession and avoidance, and sets up facts in justification. To this answer there is a general demurrer, which was overruled by the district court, and, plaintiff refusing to reply or otherwise plead, judgment was rendered against it. This is alleged in this court as error. The material facts stated in the answer and admitted by the demurrer are substantially as follows: On the 6th day of July, 1889, more than 30 electors residing within the territory described as the town of Lander, not exceeding two square miles in area, made application by petition to the board of county commissioners of the county of Fremont for the incorporation of the said town of Lander. All the preliminary proceedings are set up and shown to be in accordance with the law then in force. An act upon this subject was approved March 3, 1890, but is not to affect any proceeding for the incorporation of any city or town commenced prior to January 1, 1890. The board delayed final action upon this application, and a writ of mandamus ordering them to pass the order for the incorporation of the town of Lander was sued out of the district court of Fremont county. This order of mandamus, upon personal appearance by said commissioners, and due hearing had in said district court, was made peremptory. The board instituted proceedings in error in the supreme court of the territory. These proceedings were dismissed, and the judgment of the district court affirmed. The district court, at its July term, 1890, and on the 10th day of July, in obedience to a mandate from the supreme court, ordered a peremptory writ of mandamus to issue commanding the said board of county commissioners to make the order for the incorporation of the town of Lander. In compliance therewith such order of incorporation was duly made by said board of county commissioners on July 17, 1890. It is admitted that defendants

are regularly and lawfully exercising the franchises and offices specified, if this order of incorporation is valid. The law under which these proceedings for incorporation were had required the board of county commissioners, when legal preliminary proceedings were had, and which were had in this case, to incorporate as a town any territory specified, not exceeding two square miles in area, and containing a resident population of not less than 300 persons, on the application of not less than 30 electors residing within such territory. On July 10, 1890, the constitution of the state of Wyoming went into effect by the admission of Wyoming territory as a state in the Union.

Plaintiff claims that the constitution repeals by implication the provision of law authorizing the incorporation of towns upon the application of 30 electors, and requires the consent of a majority of the electors residing within the district incorporated; and, therefore, that the incorporation of the town of Lander without such consent on July 17, 1890, though in obedience to a peremptory writ of *mandamus*, was illegal and void. The final order of the district court for the issuing of this writ of *mandamus* was made on July 10, 1890. The constitution was then in effect. It is questionable whether the correctnesss of this judicial act of the court may be questioned in this action. It is true the parties to this action are nominally different from the parties to the suit for *mandamus*. But the matters adjudicated in that action are matters of public right in that community, and that adjudication would seem to be conclusive upon the citizens generally, and sufficient authority not only for the commissioners to incorporate the town, but also for the citizens to elect, under that incorporation, their town officers, and for those officers to assume and exercise the functions of their respective offices. That is to say, it would seem to be a final and conclusive adjudication of the legality of the order of incorporation which cannot be collaterally attacked. See Harmon v. Auditor, 22 Ill. App. 129, 123 Ill. 122;[1] Dickinson v. Eichorn, 78 Iowa, 710, 43 N. W. Rep. 620; Clark v. Wolf, 29 Iowa, 197; Ex parte Holman, 28 Iowa, 88; Cannon v. Nelson, (Iowa,) 48 N. W. Rep. 1033; Sauls v. Freeman, 24 Fla. 209, 4 South. Rep. 525. But according to the view we take of this

cause it is not necessary to decide this point. The constitutional provision relied on by plaintiff as repealing by implication the provision of law authorizing the incorporation of towns, on the application of 30 electors, is section 2 of article 13 on municipal corporations. It is necessary to a proper understanding of this section that it be considered in the connection in which it occurs. The section, with that immediately preceding and the one immediately following, is as follows: "Section 1. The legislature shall provide by general laws for the organization and classification of municipal corporations. The number of such classes shall not exceed four, (4,) and the powers of each class shall be defined by general laws, so that no such corporation shall have any power or be subject to any restriction other than all corporations of the same class. Cities and towns now existing under special charters or the general laws of the territory may abandon such charter and reorganize under the general laws of the state. Sec. 2. No municipal corporation shall be organized without the consent of the majority of the electors residing within the district proposed to be so incorporated, such consent to be ascertained in the manner and under such regulations as may be prescribed by law. Sec. 3. The legislature shall restrict the powers of such corporations to levy taxes and assessments, to borrow money and contract debts, so as to prevent the abuse of such power, and no tax or assessment shall be levied or collected or debts contracted by municipal corporations except in pursuance of law, for public purposes specified by law." Plaintiff in error claims that the language of section 2 absolutely prohibits the organization of any municipal corporations, after the constitution went into effect, under any circumstances, without the consent of a majority of the electors residing within the district incorporated. That is, the section is self-executing, and repeals by implication the law authorizing the incorporation of towns on the application of 30 electors. But is the section self-executing? The three sections taken together present a plan for organizing and classifying municipal corporations and restricting their powers, and this plan is clearly not self-executing, but requires legislation to carry it into effect. The opening language of section 2, standing alone, would be self-executing. The conclusion of the section

[1] 13 N. E. Rep. 161.

Cronkhite v. Bothwell.

and the sentence requires legislation to carry it into effect. If the section is self-executing, it must have suspended the organization of municipal corporations until the legislature had prescribed by law the manner in which, and the regulations under which, the consent of a majority of the electors should be ascertained. The result might be disastrous. No one could tell when the legislature would make such provision. There are positively no means for compelling such legislative action. And this is a repeal of existing law by implication. Repeals by implication are not favored. Still, if such is the meaning of section 2, and that meaning is clear, it must be carried into effect. Is such its meaning and intent? Section 1 says the legislature shall provide by general laws for the organization and classification of municipal corporations. Section 2 that no municipal corporation shall be organized without the consent of the majority of the electors of the district proposed to be so incorporated. How incorporated? We must find an answer to this question in order to give effect to the words "so incorporated." The answer must be in what precedes these words. Section 2 does not tell how. It may be said that it is merely by the organization of municipal corporations mentioned in the first sentence of the section, but this answer is very inadequate. And besides, the organization of municipal corporations there mentioned is evidently the same as that provided for in section 1; that is, an organization to be effected by general laws which the legislature shall provide. And the incorporation of districts contemplated by section 2 is evidently that provided for in section 1 by the organization and classification of municipal corporations under general laws to be enacted by the legislature. The entire scheme of the constitution for the organization of municipal corporations evidently is for the future,—from the time of the adoption of the constitution,—and requires legislation to put it in force. This seems to be the most practical and reasonable construction of these constitutional provisions. They all refer to, authorize, require, regulate, and limit future legislation. Until such legislation is had, they are without effect. They are not self-executing. They do not repeal existing laws. This construction is satisfactory. We will not seek a different construction which must result in the repeal by implication

of laws in force prior to the adoption of the constitution, and under which important interests have arisen. Such a repeal would be attended with confusion and disaster. The construction effecting such repeal is not the natural construction of the language of sections 1 and 2 of article 13, taken together, as they must be taken, being not only *in pari materia*, but immediately connected in position and subject-matter. The demurrer to the amended answer was properly overruled. The judgment of the district court is affirmed.

GROESBECK, C. J., and MERRELL, J., concur.